IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | |
| NEGUS-SONS, INC., ) | |
| ) | CASE NO. BK09-82518-TJM |
| Debtor(s). ) | A11-8081-TJM |
| RICK D. LANGE, Chapter 7 Trustee, ) | |
| ) | |
| Plaintiff, ) | CHAPTER 7 |
| ) | |
| vs. ) | |
| ) | |
| WELLS FARGO EQUIPMENT FINANCE, ) | |
| INC., and UNITED STATES TREASURY, ) | |
| INTERNAL REVENUE SERVICE, ) | |
| ) | |
| Defendants. ) | |

ORDER

This matter is before the court on the joint motion for partial summary judgment by the plaintiff trustee and the defendant Internal Revenue Service (Fil. No. 24) and resistance by Wells Fargo Equipment Finance, Inc. ("WFEFI") (Fil. No. 33). Brian S. Kruse represents the Chapter 7 trustee, Mark C. Milton represents the United States, and David J. Skalka represents WFEFI. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motion was taken under advisement without oral arguments.

The motion is granted.

The debtor owned a vehicle described as a "mechanic's truck." WFEFI claims a purchase money security interest in the truck, as well as an equitable lien arising from the debtor's alleged fraud in failing to note WFEFI's lien on the certificate of title and in representing on its Nebraska title application that no liens existed. The IRS claims a right to the truck arising from a priority claim and/or a tax lien for unpaid taxes. The truck was sold, and the competing liens have attached to the proceeds, which are in the possession of the Chapter 7 trustee. The trustee filed this adversary proceeding to avoid WFEFI's lien and to determine the priority of the remaining interests in the proceeds. The trustee and the IRS have now moved for summary judgment on the issue of WFEFI's lien, requesting an order determining that WFEFI has no lien or claim to the truck or its proceeds because WFEFI's lien was not noted on the vehicle's certificate of title as required by Nebraska law.

The debtor, Negus-Sons, Inc., was a company in the construction business, primarily involved in performing earth-moving work for commercial construction projects. The company's work required the use of large construction equipment, such as bulldozers, scrapers, backhoes, and front

loaders (both rubber-tired and track). Maintenance and repairs to this equipment often had to be performed at job sites, so Negus-Sons purchased the mechanic's truck at issue here essentially as a repair shop on wheels in order to service the equipment. It was a heavy-duty truck, with storage to carry tools and parts, and a crane attachment to lift equipment and provide the mechanics with access to otherwise unreachable areas where repairs were needed.

The truck was a customized vehicle, purchased from Service Trucks International ("STI") in Sioux Center, Iowa. Negus-Sons selected and paid for a 2008 Kenworth T-300 truck chassis from a Sioux Falls, S.D., dealer, at a cost of $55,366, and STI mounted a 14' service body and a 21' crane with an 11,000-pound lift capacity to the chassis for $60,220.46. To assemble the truck, STI attached the service body and crane to the chassis, hooked up the wiring for all of the electrical components of the service body and crane, and added a power take-off and hydraulic fluid pump to the chassis' transmission.[1]

Negus-Sons ordered the truck on August 1, 2007, and took delivery on or about September 24, 2007. The total cost for the truck, after STI's discounts and rebates and including the chassis, which was purchased separately, was $115,586.46. Negus-Sons traded in a Ford F650 service truck, receiving a credit of $15,586.46, which left a purchase price of $100,000.

WFEFI and Negus-Sons executed a revolving loan agreement on September 11, 2007, to establish a $4,000,000 line of credit secured by 425 pieces of Negus-Sons' equipment, vehicles, and other personal property. The collateral listed in the schedule attached to the loan agreement included the Ford F650 service truck[2] and a Bobcat welder. It did not list the Kenworth truck, the service body, or the crane. WFEFI filed a U.C.C. financing statement with the Nebraska Secretary of State on October 1, 2007.

When the mechanics' truck was delivered, Negus-Sons issued checks to the Kenworth dealer for the price of the chassis and to STI for the balance due for the service body and crane and their installation. Negus-Sons then asked WFEFI to wire $100,000 of the line of credit to its bank account to cover those checks. In support of its request, Negus-Sons provided WFEFI with a copy of the STI statement with handwritten notations to show that the $60,220.46 cost of the service body and crane, less the $15,586.46 value of the collateral truck traded in, plus the $55,366.00 cost of the Kenworth chassis equaled the $100,000 requested. WFEFI wired the funds on October 3, 2007. It prepared a letter memorializing the amendment of the revolving loan agreement by adding three pieces of collateral, including the Kenworth truck. Negus-Sons accepted and agreed to the amendment on

---

[1]Some of the evidence suggests, but does not state, that a Miller Bobcat 225 welder/generator owned by Negus-Sons was also added to the truck. WFEFI had a perfected security interest in this item.

[2]STI's invoice lists the trade-in as a 1999 model year, while WFEFI's schedule lists the truck as a 2000 model year. Both references appear to be to the same vehicle, as the same VIN is used on each document.

October 3, 2007. It is unclear why the amendment lists the value of the Kenworth as $55,366.00, the price of the chassis, rather than the price of the completed vehicle. WFEFI filed an amended U.C.C. financing statement on May 15, 2008, to add collateral, including the Kenworth and "all attachments, replacements, substitutions, additions and accessions thereof, plus the proceeds of all the foregoing."

Negus-Sons applied for a certificate of title for the truck. In the section of the application requesting lien information, the Negus-Sons employee wrote "none." The State of Nebraska issued a certificate of title for the truck to Negus-Sons on November 19, 2007.[3] The title certificate did not list WFEFI as a lienholder.

The IRS filed a tax lien on Negus-Sons' assets in July 2009, securing approximately $586,000 of a $799,216.37 claim for unpaid taxes, interest, and penalties.

Negus-Sons filed a Chapter 11 bankruptcy petition on September 23, 2009. The debtor eventually ceased operations and the case was converted to Chapter 7 at the request of the United States Trustee. WFEFI obtained relief from the automatic stay, repossessed the truck, and sold it at public auction with the consent of the bankruptcy trustee and the IRS. The bankruptcy trustee is holding the net proceeds of $75,000.

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). On a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Ricci v. DeStefano, 557 U.S. 557, 129 S. Ct. 2658, 2677 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Id. (quoting Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "Although the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078–79 (8th Cir. 2008). See also Celotex Corp., 477 U.S. at 324 (where the nonmoving party "will bear the burden of proof at trial on a dispositive issue," the nonmoving party bears the burden of production under Rule 56 to "designate specific facts showing that there is a genuine issue for trial").

The following facts are uncontroverted or established by the evidence:

---

[3]The application is dated September 24, 2007, which was the date the truck was delivered. The records of the Nebraska Department of Motor Vehicles indicate the application was received on November 19, 2007, and the title was issued the same day. The discrepancy in the dates and the delay between vehicle delivery and titling are not explained in this record.

1. Rick D. Lange is the duly appointed and qualified Chapter 7 bankruptcy trustee for the bankruptcy case of Negus-Sons, Inc., which the debtor filed as a Chapter 11 case on September 23, 2009, and which was converted to a Chapter 7 case on February 18, 2010.

2. This action concerns the following property and the net proceeds (as defined in the Stipulation filed at BK09-82518, Filing No. 175) derived from the sale thereof:

> 2008 Kenworth Model T300, Series T30, Diesel Truck, VIN# 2NKMHN7X18M223381, equipped with STI 14' service body, Tiger 1061 11,000# 21' crane, and a Miller Bobcat 225 welder/generator.

3. This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. §§ 544, 550, and 551. This court has the authority to grant the relief requested herein. This is a core proceeding pursuant to, without limitation, 28 U.S.C. §157(b)(2)(A), (B), (F), (K), and (O).

4. No security interest or lien of any party was notated on the Kenworth's certificate of title.

5. Any interests of the trustee, WFEFI, and/or the IRS attached to the net proceeds of the sale of the Kenworth as defined in and per the stipulation at Filing No. 175 in the underlying bankruptcy case at Case No. BK09-82518.

6. WFEFI is the successor in interest to the CIT Group/Equipment Financing, Inc., by reason of merger.

7. On September 11, 2007, the debtor as borrower and WFEFI as lender entered into a revolving loan agreement and security agreement (the "WFEFI Agreement").

8. At the time the WFEFI Agreement was entered, the debtor already owned the Miller Bobcat 225 welder/generator at issue in this matter.

9. On October 1, 2007, WFEFI filed a UCC-1 Financing Statement (#9907527935-8) with the Nebraska Secretary of State.

10. The debtor received an initial advance from WFEFI pursuant to the WFEFI Agreement of at least $300,000.

11. On October 3, 2007, WFEFI wired the debtor $100,000.00.

12. On October 3, 2007, WFEFI and the debtor entered into a written amendment to the WFEFI Agreement.

13. On May 15, 2008, WFEFI filed a UCC-3 amendment (#9908559953-6) to its October

-4-

1, 2007, UCC-1 Financing Statement #9907527935-8 referenced above with the Nebraska Secretary of State.

14. The debtor applied to the State of Nebraska for a certificate of title for the Kenworth. The application was signed by Bob Hayworth, on behalf of the debtor.

15. The State of Nebraska issued a certificate of title for the Kenworth to the debtor on November 19, 2007.

The dispute between the parties raises two issues: whether WFEFI had a perfected lien on the truck, and whether WFEFI had a perfected lien on the service body and crane installed on the truck.

It is clear that WFEFI did not have a perfected lien on the truck because its lien was not noted on the certificate of title. The version of the Nebraska Motor Vehicle Title Certificate Act in effect at the time the truck was delivered and titled provides that a lien must be noted on the certificate of title to be valid against creditors:

> Any mortgage, conveyance intended to operate as a security agreement as provided by article 9, Uniform Commercial Code, trust receipt, conditional sales contract, or other similar instrument covering a vehicle, if such instrument is accompanied by delivery of such manufacturer's or importer's certificate and followed by actual and continued possession of the same by the holder of such instrument or, in the case of a certificate of title, if a notation of the same has been made by the county clerk, designated county official, or department on the face thereof, shall be valid as against the creditors of the debtor, whether armed with process or not, and subsequent purchasers, secured parties, and other lienholders or claimants but otherwise shall not be valid against them[.]

Neb. Rev. Stat. § 60-164(1) (effective date Sept. 1, 2007).

WFEFI's lien was not noted on the title, and there is no way around that fact. Negus-Sons' officers say they intended to put WFEFI's lien on the title and the failure to list the lien on the title application was a mistake. Regardless, WFEFI's lien was not listed. It is worth noting that two years passed between the delivery and financing of the truck and the filing of the bankruptcy petition. Negus-Sons presumably had possession of the title certificate during that time and did not take steps to correct it. Nevertheless, and despite WFEFI's argument about the debtor's contractual duty, it was not Negus-Sons' responsibility to make sure the lien was noted. "One holding a lien upon a motor vehicle must, insofar as he can reasonably do so, protect himself and others thereafter dealing in good faith, by complying and requiring compliance with applicable laws concerning certificates of title to motor vehicles." Cornhusker Bank of Omaha v. McNamara, 288 N.W.2d 287, 290 (Neb. 1980). The motor vehicle titling statute also provided for that. Neb. Rev. Stat. § 60-164(3) (2007) (stating that the holder of a security agreement may submit it and the title certificate to the proper official to have its lien placed on the title). WFEFI knew it held a security interest in Negus-Sons' vehicles; one

would expect that standard loan file management practices would require the verification of title certificates on all titled collateral. WFEFI's failure to do so renders its security interest in the truck unperfected.

WFEFI argues that its purchase money security interest is statutorily protected by this sentence: "A purchase-money security interest, as defined in section 9-103, Uniform Commercial Code, in a vehicle is perfected against the rights of judicial lien creditors and execution creditors on and after the date the purchase-money security interest attaches." This provision was added to § 60-164(2) in 2008, as part of a bill intended to require the issuance of a certificate of title for manufactured or mobile homes affixed to real estate. Little legislative discussion was devoted to the amendment to § 60-164(2). Its purpose evidently was to clarify that lienholders who advance funds for the purchase of a motor vehicle are protected between the lien's attachment and its perfection.

"In noncriminal cases, substantive statutes are generally not given retroactive effect unless the Legislature has clearly expressed an intention that the new statute is to be applied retroactively." Soukop v. ConAgra, Inc., 653 N.W.2d 655, 657 (Neb. 2002); Abboud v. Papio-Missouri River Natural Res. Dist., 571 N.W.2d 302, 306 (Neb. 1997) (stating that "a legislative act operates only prospectively and not retrospectively" unless a legislative intent to the contrary is clearly disclosed). The purchase and titling of the truck, and the granting of a security interest in it, occurred in the latter part of 2007, prior to and therefore unaffected by the purchase-money amendment to the statute.

The second issue is whether WFEFI's security interest in the crane and service body affords it any right to the proceeds. WFEFI's position is that it perfected its security interest in the Kenworth, the service body, the crane, and the welder on October 1, 2007, when it filed its UCC-1 financing statement because the schedule of collateral filed with the financing statement included "attachments, replacements, substitutions, additions and accessions [to the listed collateral], plus the proceeds of all the foregoing." While Neb. Rev. Stat. U.C.C. § 9-335(d) states that a security interest in an accession[4] is subordinate to a security interest in the whole which is perfected by compliance with the requirements of a certificate-of-title statute, WFEFI asserts that the truck was not subject to perfection under the titling statutes on that date because no such title had been issued and no valid title application had been delivered to the proper authorities. See Neb. Rev. Stat. U.C.C. § 9-303. WFEFI argues that the subsequent titling of the vehicle did not affect its perfected security interest, but that argument is unpersuasive in light of the official comment to U.C.C. § 9-335. Comment 7 clarifies that a security interest in the whole, perfected by compliance with a certificate-of-title statute, takes priority over a security interest in the accession, regardless of whether the security interest in the accession is perfected before or after the security interest in perfected in the vehicle:

> 7. Goods Covered by Certificate of Title. This section does govern the priority

---

[4]"Accession" means goods that are physically united with other goods in such a manner that the identity of the original goods is not lost. Neb. Rev. Stat. U.C.C. § 9-102(a)(1) (Reissue 2007).

Both sides acknowledge that the service body and crane are accessions. For purposes of this motion, the court will assume that to be the case.

> of a security interest in an accession that is or becomes part of a whole that is subject to a security interest perfected by compliance with a certificate of title statute. Subsection (d) provides that a security interest in the whole, perfected by compliance with a certificate of title statute, takes priority over a security interest in the accession. It enables a secured party to rely upon a certificate of title without having to check the UCC files to determine whether any components of the collateral may be encumbered. The subsection imposes a corresponding risk upon those who finance goods that may become part of goods covered by a certificate of title. In doing so, it reverses the priority that appeared reasonable to most pre-UCC courts.
>
> Example 4: Debtor owns an automobile subject to a security interest in favor of SP-1. The security interest is perfected by notation on the certificate of title. Debtor buys tires subject to a perfected-by-filing purchase-money security interest in favor of SP-2 and mounts the tires on the automobile's wheels. If the security interest in the automobile attaches to the tires, then SP-1 acquires priority over SP-2. **The same result would obtain if SP-1's security interest attached to the automobile and was perfected after the tires had been mounted on the wheels.**

Neb. Rev. Stat. U.C.C. § 9-335, cmt. 7 (emphasis added).

WFEFI's interest is essentially the same as SP-2 in the last sentence of comment 7. There has been no judicial interpretation of this statute, so its meaning must be derived from its plain language. Because the vehicle was titled after the installation of the accessions, any perfection by title controls so that subsequent creditors need check only the title records, rather than the title records and the U.C.C. records. In this case, with no lien noted on the title, the trustee's rights as a lien creditor take priority. The trustee's hypothetical lien under 11 U.S.C. § 544 is superior to any lien that is unperfected on the date the petition was filed. Union Planters Bank, N.A. v. Burns (In re Gaylord Grain L.L.C.), 306 B.R. 624, 628-29 (B.A.P. 8th Cir. 2004); Timberland Bancshares, Inc. v. Garrison (In re Garrison), 462 B.R. 666, 687 (Bankr. W.D. Ark. 2011).

WFEFI argues that the court should recognize the equitable remedy of a constructive trust in WFEFI's favor, in light of the debtor's "fraud" in failing to record the lien on the title certificate.

> Under Nebraska law, a constructive trust is a relationship, with respect to property, subjecting the person who holds title to the property to an equitable duty to convey it to another on the ground that his or her acquisition or retention of the property would constitute unjust enrichment. To establish a constructive trust, the court must find by clear and convincing evidence that legal title was obtained by fraud, misrepresentation, or an abuse of an influential or confidential relationship, and that, under the circumstances, the party holding legal title is not equitably entitled to hold and enjoy the property.

Lange v. Schropp (In re Brook Valley IV Joint Venture), 347 B.R. 662, 676-77 (B.A.P. 8th Cir.

2006) (citations omitted).

WFEFI has not established the necessary elements of a constructive lien on these facts, but even if it had, its interest would still be unperfected and subordinate to the trustee's interest. Lone Oak Farm Corp., v. Riverside Fertilizer Co., 428 N.W.2d 175, 180 (Neb. 1988).

WFEFI also argues that a resulting trust was created when WFEFI funded the purchase of the service truck. "[A] resulting trust has been defined to be one raised by implication of law and presumed always to have been contemplated by the parties, the intention as to which is to be found in the nature of their transaction, but not expressed in deed or instrument of conveyance." Campbell v. Kirby, 239 N.W.2d 792, 796 (Neb. 1976) (quoting Reetz v. Olson, 20 N.W.2d 687 (Neb. 1945)). "The presumption of a purchase money trust arises in favor of a person from whom the consideration comes for a conveyance of property to another. Since men in their affairs seldom give consideration to receive nothing, the intent to make a trust is presumed." Campbell, 239 N.W.2d at 796. Like a constructive trust, it is an equitable remedy. Brtek v. Cihal, 515 N.W.2d 628, 633 (Neb. 1994); Entergy Arkansas, Inc. v. Nebraska, 226 F. Supp. 2d 1174, 1181 (D. Neb. 2002). Where an adequate remedy at law exists, the court need not resort to equity. Teadtke v. Havranek, 777 N.W.2d 810, 818 (Neb. 2010). WFEFI's dissatisfaction with the remedy provided by the law does not make the remedy inadequate. Mason v. Mayberry, Case No. A-97-1309, 1999 WL 248559, at *2 (Neb. Ct. App. Apr. 27, 1999).

The trustee's hypothetical lien status is superior to WFEFI's unperfected liens in the Kenworth chassis and in the service body and crane installed on the chassis. Therefore, WFEFI's interest in the proceeds of the sale of the mechanics' truck is subordinate to other valid interests in those proceeds. WFEFI did hold a perfected security interest in the Miller Bobcat welder/generator and is entitled to the portion of the proceeds attributable to the value of that item.

IT IS ORDERED: The joint motion for partial summary judgment by the plaintiff trustee and the defendant Internal Revenue Service (Fil. No. 24) is granted.

DATED:    April 2, 2012

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
    *Brian S. Kruse      *Mark C. Milton
    David J. Skalka      U.S. Trustee

*Movant is responsible for giving notice to other parties if required by rule or statute.